**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C.<br><br>                                  *Plaintiffs*,<br><br>        v.<br><br>BRITBOX, LLC<br><br>                                  *Defendant*. | **Case No. 1:23-cv-08971**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") allege against Defendant BritBox, LLC ("BritBox") as follows:

## PRELIMINARY STATEMENT

1.     This is a case of willful infringement of DISH's valuable patents related to streaming content to end-user devices.  BritBox knowingly infringes those patents and uses DISH's technology to stream multimedia content through an application and a variety of digital connected devices.  DISH seeks to recover damages for BritBox's willful infringement and to obtain injunctive relief to preclude BritBox's further infringement of DISH's intellectual property.

## PARTIES

2.     Plaintiff DISH Technologies L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It provides innovation and technology services and products to, among others, the DISH Network® satellite pay TV service operated by DISH Network L.L.C. and the Sling TV® streaming pay TV service operated by Sling TV L.L.C.

3.      Plaintiff Sling TV L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It operates the Sling TV® streaming pay TV service.

4.      On information and belief, Defendant BritBox is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 1120 Avenue of the Americas, 5th Floor, New York, NY 10036.  On information and belief, BritBox owns and operates an online streaming service offering video subscription through its BritBox Application, BritBox Site, and BritBox Server(s).  BritBox has appointed its General Counsel at BBC Studios Americas, Inc., located at 1120 Avenue of the Americas, 5th Floor, New York, NY, United States, 10036 as its agent for service of process.

## JURISDICTION AND VENUE

5.      DISH asserts a claim for patent infringement against BritBox arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over BritBox for at least the following reasons: (1) BritBox is incorporated in New York; (2) BritBox has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (3) BritBox regularly does business or solicits business in this District; (4) BritBox engages in other persistent courses of conduct and derives substantial revenue by offering and providing infringing products and services in this District; and (5) BritBox has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be subject to suit here by its offering of infringing products and services and providing infringing products and services in this District.

7.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1400(b) because BritBox is incorporated in New York.  Additionally, on information and belief, BritBox has committed acts of infringement in the State of New York, including but not limited to offering products or services that infringe one or more of DISH's asserted patents to customers located in New York and/or for use in New York.

## THE ABR PATENTS

8.      On March 16, 2021, the United States Patent and Trademark Office (the "PTO") duly and lawfully issued United States Patent No. 10,951,680 ("'680 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '680 Patent is attached as Exhibit A.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '680 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '680 Patent.

9.      On June 13, 2023, the PTO duly and lawfully issued United States Patent No. 11,677,798 ("'798 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '798 Patent is attached as Exhibit B.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '798 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '798 Patent.

10.     On August 2, 2016, the PTO duly and lawfully issued United States Patent No. 9,407,564 ("'564 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content."  A true and correct copy of the '564 Patent is attached as Exhibit C.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '564 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '564 Patent.

11.     On November 5, 2019, the PTO duly and lawfully issued United States Patent No. 10,469,554 ("'554 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '554 Patent is attached as Exhibit D.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '554 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '554 Patent.

12.     On November 5, 2019, the PTO duly and lawfully issued United States Patent No. 10,469,555 ("'555 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '555 Patent is attached as Exhibit E.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '555 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '555 Patent.

13.     On October 21, 2014, the PTO duly and lawfully issued United States Patent No. 8,868,772 ("'772 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '772 Patent is attached as Exhibit F.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '772 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '772 Patent.

14.     On October 11, 2022, the PTO duly and lawfully issued United States Patent No. 11,470,138 ("'138 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '138 Patent is attached as Exhibit G.  Subject to the exclusive license referenced below, all rights, title, and interest in and to the '138 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '138 Patent.

15.     On August 25, 2020, the PTO duly and lawfully issued United States Patent No. 10,757,156 ("'156 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content."  A true and correct copy of the '156 Patent is attached as Exhibit H.  Subject

to the exclusive license referenced below, all rights, title, and interest in and to the '156 Patent

have been assigned to DISH Technologies L.L.C., which is the sole owner of the '156 Patent.

16.     DISH Technologies has entered into an exclusive license with Sling TV L.L.C. granting

substantial rights in the above-identified patents to Sling TV L.L.C., including the right to sue

thereon.

17.     The claimed inventions in these patents are directed to various novel aspects and

improvements to adaptive bitrate streaming ("ABR") technology.  The '680, '798, '564, '554,

'555, '772, '138, and '156 Patents (collectively, the "ABR Patents" or "Asserted Patents") are

currently in full force and effect.  Each of the ABR Patents issued from U.S. Patent Application

No. 11/116,783 ("'783 Application") or patent applications that are continuations or continuations-

in-part of the '783 Application.

## BACKGROUND OF THE DISPUTE

### MOVE IS A PIONEER OF ADAPTIVE BITRATE TECHNOLOGY

18.     Drew Major founded Move Networks, Inc. ("Move") in 2003 in American Fork, Utah

(under the name XLon, until 2006).  Move invented HTTP-based Adaptive Bitrate Streaming to

improve the quality of streamed video content over the Internet, and was the original owner of the

ABR Patents.  While at Move, inventors David Brueck, Mark Hurst, and Drew Major (collectively,

"the ABR Inventors") observed that the Internet was fast becoming a preferred method for

distributing live and recorded video to individuals.  However, content delivery over the Internet at

the time was notoriously unreliable, expensive and inferior in quality compared to cable and

satellite delivered content.  To access video content online, users were left with two unsatisfying

choices: (1) waiting for their content to download (which did not support immediate viewing of

live content and often required the user to select the quality desired: LOW, MEDIUM, or HIGH,

which in turn determined how long the user had to wait before viewing); or (2) streaming live or recorded content that often was unreliable (pausing to "buffer") or only worked at low-resolution.

19.     The ABR Inventors knew that media streaming had not reached its full potential and that, through research and improvement, it was possible that streaming could rival the quality of cable and satellite delivered content.  The current state-of-the-art was unacceptable prior to the inventions disclosed in the patents-in-suit.  Often during playback, the streaming technologies did a poor job selecting the video quality / resolution that the network bandwidth and reliability could support.  Most commercial systems, from companies like RealNetworks, Adobe, Microsoft, or Apple, were proprietary implementations based on public Internet standards (RTP/RTSP). Common standards notwithstanding, their proprietary implementations were mutually incompatible.  In addition, the existing technologies were expensive to deploy by the Content Delivery Networks ("CDNs") and required many servers to scale to a large number of viewers.  In addition, these technologies often required custom server architectures and routing IT configurations to penetrate Internet firewalls.  The ABR Inventors recognized these shortcomings as an opportunity, and they developed a better solution.

20.     The ABR Patents' specifications detail the need for improved data transport in content streaming.  Users will generally choose streaming over downloading because "they tend to want to see or hear the media files instantaneously."  *See, e.g.*, '554 Patent, Exhibit D, at col. 1, ll. 66-67.  Unfortunately for protocols at the time, "[s]treaming offers the advantage of immediate access to the content but currently sacrifices quality compared with downloading a file of the same content."  *See, e.g.*, *id.* col. 2, lines 1-4.  The ABR Inventors observed that "a need exists for an [invention] that alleviates the problems of reliability, efficiency, and latency" encountered in currently available content streaming systems.  *See, e.g.*, *id.* col. 2, ll. 59-61.

21.     To address these needs, the ABR Inventors came up with a novel solution:  HTTP-based Adaptive Bitrate Streaming.   ABR segments the full content file into smaller units ("streamlets") in multiple bitrates and delivers them over HTTP / TCP, the underlying protocols used for reliably transmitting data over the Internet.  The ABR Inventors' approach enables content delivery to adapt to the bandwidth available at any particular time, ensuring delivery of the highest possible quality content throughout the course of the stream.  Under the ABR Inventors' client-side pull approach, the playback client device continuously observes the quality of a user's network connection and adjusts the requested quality of the streamed content.  The existing RTP/RTSP-based technologies used a server-side push approach with client / server architecture, where the server determined the bitrate to send to the client.  The other technologies also did not segment the content, usually delivering it as a continuous stream of bits or as a single large file.  Segmenting the content allows the playback device to easily change bitrates.  The result is that today, Move's patented ABR technology allows Internet users to stream content from across the world in real time at the highest possible quality.

22.     The ABR Patents' specifications describe how the Move inventors significantly improved the user viewing experience of streaming content data over a network: "[A] need exists for an apparatus, system, and method that alleviate the problems of reliability, efficiency, and latency [during data transport streaming over a network].  Additionally, such an apparatus, system, and method would offer instantaneous viewing along with the ability to fast forward, rewind, direct seek, and browse multiple streams."  *See, e.g.*, *id.* col. 2, ll. 37–43.

23.     One unconventional but fundamental improvement described in the ABR Patents is the creation of sets of streamlets from the original large content file, where a plurality of streamlets in each set are aligned by starting time and duration (typically a few seconds) but have different

bitrates.  Contiguous playback of the streamlets independently yields playback of the full content. The common alignment of the streamlets in each set allows a playback device to select one quality of streamlet from a particular set, and, as needed to adjust for changing bandwidth resources, to select a different quality of streamlet from the subsequent set.  When the bandwidth of the user's network is constrained, the client can select a lower bitrate to maintain playback continuity instead of "buffering."  This eliminates the need for users to download the full content file before beginning playback.  Segmenting the media into streamlets enables users to retrieve and enjoy content at the best appropriate bitrate possible as the media is streamed.  It is also well suited for live stream playback.

24.    Another non-routine and revolutionary improvement described in the ABR Patents is that the client (rather than the server) controls switching between different bitrates.  The benefits of using an intelligent client to make the decisions and switch between different bitrate streamlets are two-fold.  First, the client is in a better position to determine the appropriate streamlet by measuring the actual throughput of the network at its point of reception.  Second, moving the decision-making to the client effectively eliminates the need for a customized video server. Instead, a standard web server can be employed to host all the content's streamlets.  Streamlets are requested by a client using the standard HTTP/TCP protocol—the web standard upon which the Internet is built.  Custom IT configurations are unnecessary as the file requests operate on the same "port 80" as all web server requests.  Access to the segmented content can be scaled exponentially through the use of standardized web caches.  Together, these benefits represent a vast reduction in operating and publishing costs versus RTP/RTSP-based systems.

25.    The ABR Inventors' improvements to streaming succeeded where others tried and failed.  During the late 1990s, established streaming companies, including RealNetworks, Adobe,

Microsoft, and Apple, separately attempted to develop a successful multiple bitrate streaming platform by using proprietary implementations of the RTP/RTSP standards.  None of these systems succeeded at making bitrate switching consistent and none actually worked over the Internet.

**ABR PATENTS SELL FOR $45 MILLION**

26.    In December of 2010, EchoStar Advanced Technologies L.L.C., then a wholly owned subsidiary of EchoStar Corporation, spent $45 million to acquire Move and its ABR Patent portfolio.  Recognizing the ingenuity of Move's ABR technology and the value-added for its customers and their increasing interest in quality online content delivery, DISH affiliate DISH Digital Holding L.L.C. acquired EchoStar Advanced Technologies L.L.C. in connection with a joint venture with EchoStar Corporation in 2012.  EchoStar Advanced Technologies L.L.C., which was later renamed DISH Digital L.L.C., transferred the ABR Patents to EchoStar Technologies L.L.C. (a subsidiary of EchoStar Corporation) in 2014.  In February 2017, EchoStar Technologies L.L.C. became a subsidiary of DISH Network L.L.C., and in February 2018, was renamed DISH Technologies L.L.C.

27.    Two of the three ABR Inventors became and remain DISH employees.

28.    DISH and its affiliated companies are a leading provider of satellite TV and Internet streaming services, and serve approximately nine million subscribers in the United States.  It is a leading investor and innovator in infrastructure and technologies that will meet the personalized needs of its increasingly diverse pool of customers.  Since its founding, DISH and its affiliated companies have invested millions in research and development and acquisition of novel technologies that will resolve long-felt problems and needs across its industry.

29.    As the public continues to increasingly rely on the Internet for its informational and entertainment needs, DISH and its affiliated companies have dedicated great time and resources

to improving the quality of streaming media.  The specific entities that implement and own the technology covered by Move's patent portfolio have undergone significant evolution.  These entities continue to improve upon ABR technology and advance reliable delivery of high-resolution content over the Internet.

30.     DISH's recent investments in ABR technology have already proven a success.  ABR is one of the primary contributors to Sling TV's popularity.  Sling TV L.L.C. is DISH and its affiliated companies' main Internet-delivered content provider, offering programming to numerous Internet streaming devices.  Since the launch of Sling TV in the beginning of 2015, Sling TV has grown to over two million subscribers, who are now receiving a live TV video experience comparable to cable or satellite.

## BRITBOX'S PRODUCTS AND SERVICES INFRINGE THE ABR PATENTS

31.     BritBox has been and is now directly infringing and/or indirectly infringing the ABR Patents.

32.     On information and belief, BritBox is a distributor of on-demand content via the Internet.  Exhibit I at 1.  BritBox makes, uses, sells, and offers for sale in the United States products and services that infringe the ABR Patents, and continues to do so.  These infringing products and services include online streaming services operated by BritBox through its Application, Site, and Server(s) (collectively, "the Accused Streaming Services").  *Id.*

## BRITBOX WAS AWARE OF THE ABR PATENTS WELL BEFORE THIS LAWSUIT

33.     On information and belief, BritBox is a joint venture of the British Broadcasting Corporation ("BBC") and ITV plc ("ITV"), each of which has a 50% ownership interest in BritBox.

34.     On November 9, 2018, DISH separately sent a letter to Tim Davie, the Chief Executive Officer at BBC, and Ian Griffiths, the Chief Operating Officer, Group Financial Director, and Executive Director at ITV.  Exhibit J.  This letter informed BBC and ITV of DISH's ABR patent portfolio, including, among others, the '772 and '564 Patents asserted in this lawsuit.  *Id*.  The November 9, 2018 letter also invited BBC and ITV to discuss taking a license from DISH.  *Id*.

35.     On November 27, 2018, BBC's Senior Intellectual Property Lawyer, Ms. Julie Alden, responded to DISH's November 9, 2018 letter to Mr. Davie by email, acknowledged its receipt, and indicated that it had been passed to the BBC IP Legal Department.  Exhibit K at 2-3.  Ms. Alden indicated that BBC would be in touch again after having an opportunity to consider the letter further.

36.     Having heard nothing further from the BBC or Ms. Alden by April 3, 2019, DISH sent a follow-up email to Ms. Alden.  *Id*. at 2.  Ms. Alden responded by email on May 7, 2019, stating that she would follow up internally and get back to DISH.  *Id*.

37.     Having heard nothing further from the BBC of Ms. Alden by May 29, 2019, DISH sent a second follow-up email to Ms. Alden, notifying her that DISH will commence enforcement proceedings if no response is received by June 14, 2019.  *Id*. at 1-2.  Ms. Alden responded on June 13, 2019, that BBC had discussed DISH's letter internally and with ITV.  *Id.* at 1.  Ms. Alden recommended that DISH reach out to BritBox directly, providing contact information for Britbox's President and General Counsel later that same day.  *Id*.

38.     On July 18, 2019, DISH sent an email to BritBox's President, Soumya Sriraman, and, BritBox's General Counsel, Vernon Chu, using the contact information provided by Ms. Alden. Exhibit L.  With this email, DISH included a copy of the November 9, 2018 letter it sent to BBC and ITV.  Exhibit J.

39.     Having heard nothing from Mr. Sriraman or Mr. Chu by September 15, 2020, DISH sent a follow-up email to Mr. Chu.  Exhibit M.  This email included a letter dated the same day informing BritBox of DISH's ABR patent portfolio, including, among others, the '564 Patent asserted in this lawsuit, and inviting BritBox to discuss taking a license from DISH.  Exhibit N. This letter also included infringement claim charts for various patents in DISH's ABR patent portfolio, including, among others, the '564 Patent asserted in this lawsuit.  Exhibits O1-O4.  In addition, the letter indicated that DISH was open to entering into a non-disclosure agreement ("NDA") to facilitate licensing discussions.  Exhibit N.

40.     On September 16, 2020, Mr. Chu emailed DISH acknowledging receipt of DISH's September 15, 2020 letter and infringement claim charts.  Exhibit P at 1.

41.     On November 3, 2020, DISH sent a second follow-up email to Mr. Chu.  *Id*.  This email included a letter dated the same day that again informed BritBox of DISH's ABR patent portfolio, including, among others, the '564 Patent asserted in this lawsuit, and again invited BritBox to discuss taking a license from DISH.  Exhibit Q.  Enclosed with the email was the same infringement claim charts that DISH provided with its September 15, 2020 communications to Mr. Chu.  Exhibits O1-O4.  In addition, the letter again indicated that DISH was open to entering into an NDA to facilitate licensing discussions.  Exhibit Q.

42.     As of the date of this complaint, DISH still had not heard anything further from Mr. Vernon Chu or anyone else at BritBox.

43.     After nearly five years of negotiation attempts to no avail, BritBox continues to use DISH-owned technology in its streaming services without a license

## CLAIMS FOR RELIEF

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,469,554

### DIRECT INFRINGEMENT

44.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

45.     On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 16 of the '554 Patent, which recites:

> An end user station to stream a live event video over a network from a server for playback of the video, the content player device comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;
>
> wherein the live event video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the live event video;
>
> wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bit rate of no less than 600 kbps; and
>
> wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the live event video at a different one of the different bitrates;
>
> select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;
>
> place a streamlet request to the server over the one or more network connections for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the one or more network connections; and

provide the received first streamlet for playback of the live event video.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit S to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.[1]

46.     Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '554 Patent.

47.     BritBox possesses knowledge of, and is aware of, the '554 Patent, or became aware of this patent no later than the time of filing this lawsuit.

48.     BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

49.     BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

50.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

---

[1] DISH notes that Exhibits S-Z, *see infra*, are based exclusively on publicly available information, and without the benefit of this Court's claim construction.  Accordingly, for this Count and each Count below, DISH reserves the right to supplement, amend, or modify the analysis as warranted in light of additional facts, claim construction, or other developments.  DISH further reserves the right to add additional claims as the case progresses.

51.     BritBox is liable for inducing infringement of the '554 Patent under 35 U.S.C. § 271(b) by having knowledge of the '554 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '554 Patent, with specific intent, by its customers.

52.     Specifically, BritBox actively induces infringement of the '554 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '554 Patent.

53.     BritBox's customers for the Accused Streaming Services directly infringe the '554 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

54.     For example, BritBox actively induces infringement of the '554 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '554 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

55.    On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '554 Patent through inducement of the sale and use of the Accused Streaming Services.

56.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '554 Patent.

57.    On information and belief, despite knowing that its actions constituted induced infringement of the '554 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

58.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '554 Patent.

59.    BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

60.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

61.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

62.     BritBox is liable for contributory infringement of the '554 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '554 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '554 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

63.     BritBox is liable for contributory infringement by having knowledge of the '554 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '554 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

64.     Specifically, BritBox contributes to infringement of the '554 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '554 Patent.  Those customers directly infringe the '554 Patent by using the Accused Streaming Services.

65.     For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers, including users and subscribers, to directly infringe the '554 Patent by using the Accused Streaming Services in the United States.

66.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content

streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '554 Patent.

67.     BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '554 Patent.

68.     BritBox's past and ongoing infringement of the '554 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,677,798

### DIRECT INFRINGEMENT

69.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

70.     On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 11 of the '798 Patent, which recites:

An end user station comprising:

a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish one or more network connections between the end user station and at least one server, wherein the at least one server is configured to access at least one of a plurality of groups of streamlets of digital content;

wherein the digital content is encoded at a plurality of different bit rates to create a plurality of streams including at least a first bit rate stream, a second bit rate stream, and a third bit rate stream, wherein each of the first bit rate stream, the second bit rate stream, and the third bit rate stream comprises a group of streamlets encoded at the same respective one of the different bit rates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the digital content;

wherein at least one of the first bit rate stream, the second bit rate stream, and the third bit rate stream is encoded at a bit rate of no less than 600 kbps; and

wherein the first streamlets of each of the first bit rate stream, the second bit rate stream and the third bit rate stream each has an equal playback duration and each of the first streamlets encodes the same portion of the digital content at a different one of the different bit rates;

determine whether to select a higher or lower bit rate copy of the stream and based on that determination, select a specific one of the first bit rate stream, the second bit rate stream, and the third bit rate stream;

place a first streamlet request to the at least one server over the one or more network connections for the first streamlet of the selected stream;

receive the requested first streamlet from the at least one server via the one or more network connections; and

provide the received first streamlet for output of the digital content to a presentation device.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit T to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

71.     Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '798 Patent.

72.     BritBox possesses knowledge of, and is aware of, the '798 Patent, or became aware of this patent no later than the time of filing this lawsuit.

73.     BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

74.     BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

75.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

76.     BritBox is liable for inducing infringement of the '798 Patent under 35 U.S.C. § 271(b) by having knowledge of the '798 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '798 Patent, with specific intent, by its customers.

77.     Specifically, BritBox actively induces infringement of the '798 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '798 Patent.

78.     BritBox's customers for the Accused Streaming Services directly infringe the '798 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

79.     For example, BritBox actively induces infringement of the '798 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '798 Patent.  *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the

BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

80.     On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '798 Patent through inducement of the sale and use of the Accused Streaming Services.

81.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '798 Patent.

82.     On information and belief, despite knowing that its actions constituted induced infringement of the '798 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

83.     BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '798 Patent.

84.     BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

85.     BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT**

86.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

87.     BritBox is liable for contributory infringement of the '798 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '798 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '798 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

88.     BritBox is liable for contributory infringement by having knowledge of the '798 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '798 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

89.     Specifically, BritBox contributes to infringement of the '798 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '798 Patent.  Those customers directly infringe the '798 Patent by using the Accused Streaming Services.

90.     For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers, including users and subscribers, to directly infringe the '798 Patent by using the Accused Streaming Services in the United States.

91.     The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '798 Patent.

92.     BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '798 Patent.

93.     BritBox's past and ongoing infringement of the '798 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,407,564

### DIRECT INFRINGEMENT

94.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

95.     On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 8 of the '564 Patent, which recites:

> A method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network, the method comprising;
>
> streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network, wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server, wherein each of the files yields a different portion of the video on playback, wherein the files across the different copies yield the same portions of the video on playback, and wherein each of the files comprises a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

> requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;
>
> automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the factor relates to the performance of the network; and
>
> making the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time, wherein the making the successive determinations to shift comprises upshifting to a higher quality one of the different copies when the at least one factor is greater than a first threshold and downshifting to a lower quality one of the different copies when the at least one factor is less than a second threshold; and
>
> presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit U to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

96.     Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '564 Patent.

97.     On information and belief, BritBox possessed knowledge of, and was aware of, the '564 Patent well before the time of filing this lawsuit.  *See, e.g.,* Paragraphs 33—43, *supra*.

98.     BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

99.     BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

100.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

101.     BritBox is liable for inducing infringement of the '564 Patent under 35 U.S.C. § 271(b) by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent, with specific intent, by its customers.

102.     Specifically, BritBox actively induces infringement of the '564 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '564 Patent.

103.     BritBox's customers for the Accused Streaming Services directly infringe the '564 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

104.     For example, BritBox actively induces infringement of the '564 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '564 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

105.    On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '564 Patent through inducement of the sale and use of the Accused Streaming Services.

106.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '564 Patent.

107.    On information and belief, despite knowing that its actions constituted induced infringement of the '564 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

108.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '564 Patent.

109.    BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

110.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

111.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

112.    BritBox is liable for contributory infringement of the '564 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '564 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '564 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

113.    BritBox is liable for contributory infringement by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

114.    Specifically, BritBox contributes to infringement of the '564 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '564 Patent.  Those customers directly infringe the '564 Patent by using the Accused Streaming Services.

115.    For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers,

including users and subscribers, to directly infringe the '564 Patent by using the Accused Streaming Services in the United States.

116.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '564 Patent.

117.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '564 Patent.

118.    BritBox's past and ongoing infringement of the '564 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,951,680

### DIRECT INFRINGEMENT

119.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

120.    On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 14 of the '680 Patent, which recites:

> An end user station to stream a video over a network from a server for playback of the video, the content player device comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bit rate of no less than 600 kbps; and wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place at least one virtual timeline request for at least one virtual times based on the selected one of the he low quality stream, the medium quality stream, and the high quality stream; and

receive the at least one virtual timeline.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection. The Accused Streaming Services adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit V to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

121.    Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '680 Patent.

122.    BritBox possesses knowledge of, and is aware of, the '680 Patent, or became aware of this patent no later than the time of filing this lawsuit.

123.    BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

124.   BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

125.   DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

126.   BritBox is liable for inducing infringement of the '680 Patent under 35 U.S.C. § 271(b) by having knowledge of the '680 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '680 Patent, with specific intent, by its customers.

127.   Specifically, BritBox actively induces infringement of the '680 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '680 Patent.

128.   BritBox's customers for the Accused Streaming Services directly infringe the '680 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

129.   For example, BritBox actively induces infringement of the '680 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '680 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).  On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '680 Patent through inducement of the sale and use of the Accused Streaming Services.

130.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '680 Patent.

131.    On information and belief, despite knowing that its actions constituted induced infringement of the '680 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

132.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '680 Patent.

133.    BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

134.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT**

135.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

136.    BritBox is liable for contributory infringement of the '680 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '680 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '680 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

137.    BritBox is liable for contributory infringement by having knowledge of the '680 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '680 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

138.    Specifically, BritBox contributes to infringement of the '680 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '680 Patent.  Those customers directly infringe the '680 Patent by using the Accused Streaming Services.

139.    For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers,

including users and subscribers, to directly infringe the '680 Patent by using the Accused Streaming Services in the United States.

140.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '680 Patent.

141.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '680 Patent.

142.    BritBox's past and ongoing infringement of the '680 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,469,555

## DIRECT INFRINGEMENT

143.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

144.    On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 10 of the '555 Patent, which recites:

> A content player device to stream a video over a network from a server for playback of the video, the content player device comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> establish one or more network connections between the client module and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, wherein each of the low quality stream, the medium quality stream, and the high quality stream comprises a streamlet that encodes the same portion of the video at a different one of the plurality of different bitrates;

wherein at least one of the low quality stream, medium quality stream, and high quality stream is encoded at a bit rate of no less than 600 kbps; and

wherein the streamlet encoding the same portion of the video in the low quality stream has an equal playback duration as the streamlet encoding the same portion of the video in the high quality streams;

select a specific one of the streams based upon a determination by the client module to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the one or more network connections for the selected stream;

receive the requested streamlets from the server via the one or more network connections; and

provide the received streamlets for playback of the video.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection. The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit W to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

145.   Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '555 Patent.

146.   BritBox possesses knowledge of, and is aware of, the '555 Patent, or became aware of this patent no later than the time of filing this lawsuit.

147.   BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

148.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

149.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

150.    BritBox is liable for inducing infringement of the '555 Patent under 35 U.S.C. § 271(b) by having knowledge of the '555 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '555 Patent, with specific intent, by its customers.

151.    Specifically, BritBox actively induces infringement of the '555 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '555 Patent.

152.    BritBox's customers for the Accused Streaming Services directly infringe the '555 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

153.    For example, BritBox actively induces infringement of the '555 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's  infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '555 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

154.    On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '555 Patent through inducement of the sale and use of the Accused Streaming Services.

155.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '555 Patent.

156.    On information and belief, despite knowing that its actions constituted induced infringement of the '555 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

157.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '555 Patent.

158.    BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

159.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

### INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

160.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

161.    BritBox is liable for contributory infringement of the '555 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '555 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '555 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

162.    BritBox is liable for contributory infringement by having knowledge of the '555 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '555 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

163.    Specifically, BritBox contributes to infringement of the '555 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '555 Patent.   Those customers directly infringe the '555 Patent by using the Accused Streaming Services.

164.    For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers,

including users and subscribers, to directly infringe the '555 Patent by using the Accused Streaming Services in the United States.

165.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '555 Patent.

166.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '555 Patent.

167.    BritBox's past and ongoing infringement of the '555 Patent has and will continue to irreparably harm DISH and cause DISH damages.

### COUNT VI:  INFRINGEMENT OF U.S. PATENT NO. 8,868,772

### DIRECT INFRINGEMENT

168.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

169.    On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '772 Patent, which recites:

> A method for presenting rate-adaptive streams, the method comprising:
>
> streaming by a media player operating on an end user station a video from a set of one or more servers, wherein each of a plurality of different copies of the video encoded at different bit rates is stored as multiple files on the set of servers, wherein each of the multiple files yields a different portion of the video on playback, wherein the multiple files across the different copies yield the same portions of the video on playback, each of said files having a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential ones of the files of one of the copies from the set of servers over a plurality of Transmission Control Protocol (TCP) connections based on the time indexes;

automatically requesting by the media player from the set of servers over the plurality of TCP connections subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, said automatically requesting including,

repeatedly generating a set of one or more factors indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the set of one or more factors relate to the performance of the network; and

making the successive determinations to shift the playback quality based on at least one of the set of factors to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time; and

presenting the video by playing back with the media player on the end user station the requested files in order of ascending playback time.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit X to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

170.   Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '772 Patent.

171.   On information and belief, BritBox possessed knowledge of, and was aware of, the '772 Patent well before the time of filing this lawsuit. *See, e.g.,* Paragraphs 33—43, *supra*.

172.   BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

173.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

174.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

175.    BritBox is liable for inducing infringement of the '772 Patent under 35 U.S.C. § 271(b) by having knowledge of the '772 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '772 Patent, with specific intent, by its customers.

176.    Specifically, BritBox actively induces infringement of the '772 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '772 Patent.

177.    BritBox's customers for the Accused Streaming Services directly infringe the '772 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

178.    For example, BritBox actively induces infringement of the '772 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '772 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

179.    On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '772 Patent through inducement of the sale and use of the Accused Streaming Services.

180.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '772 Patent.

181.    On information and belief, despite knowing that its actions constituted induced infringement of the '772 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

182.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '772 Patent.

183.    BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

184.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

### INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

185.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

186.    BritBox is liable for contributory infringement of the '772 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '772 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '772 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

187.    BritBox is liable for contributory infringement by having knowledge of the '772 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '772 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

188.    Specifically, BritBox contributes to infringement of the '772 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '772 Patent.   Those customers directly infringe the '772 Patent by using the Accused Streaming Services.

189.    For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers,

including users and subscribers, to directly infringe the '772 Patent by using the Accused
Streaming Services in the United States.

190.   The adaptive streaming technology market is a small and well-defined market with a
few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and
continuing development of Move's patent portfolio.  On information and belief, as a provider of
streamed content, BritBox would have monitored developments relating to adaptive-rate content
streaming technology, including DISH's ABR technology, and knew, or at the very least, should
have known, about the issuance of the '772 Patent.

191.   BritBox continues to provide the Accused Streaming Services with full knowledge and
disregard of the ABR Patents, including the '772 Patent.

192.   BritBox's past and ongoing infringement of the '772 Patent has and will continue to
irreparably harm DISH and cause DISH damages.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 11,470,138

### DIRECT INFRINGEMENT

193.   DISH re-alleges and incorporates herein by reference the allegations contained in all
prior Paragraphs of the Complaint as if fully set forth herein.

194.   On information and belief, BritBox directly infringes, literally and/or under the doctrine
of equivalents, at least claim 14 of the '138 Patent, which recites:

> An end user station to stream a video over a network from a server for playback of
> the video, the end user station comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-
> readable instructions that, when executed, cause the processor to:
>
>> establish an internet connection between the end user station and the server,
>> wherein the server is configured to access at least one of a plurality of
>> groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the internet connection for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the internet connection; and

provide the received first streamlet for playback of the video.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection. The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit Y to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

195.    Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '138 Patent.

196.    BritBox possesses knowledge of, and is aware of, the '138 Patent, or became aware of this patent no later than the time of filing this lawsuit.

197.    BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

198.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

199.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

200.    BritBox is liable for inducing infringement of the '138 Patent under 35 U.S.C. § 271(b) by having knowledge of the '138 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '138 Patent, with specific intent, by its customers.

201.    Specifically, BritBox actively induces infringement of the '138 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '138 Patent.

202.    BritBox's customers for the Accused Streaming Services directly infringe the '138 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

203.    For example, BritBox actively induces infringement of the '138 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and

because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '138 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

204.  On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '138 Patent through inducement of the sale and use of the Accused Streaming Services.

205.  The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '138 Patent.

206.  On information and belief, despite knowing that its actions constituted induced infringement of the '138 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

207.  BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '138 Patent.

208.  BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

209.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT**

210.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

211.    BritBox is liable for contributory infringement of the '138 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '138 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '138 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

212.    BritBox is liable for contributory infringement by having knowledge of the '138 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '138 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

213.    Specifically, BritBox contributes to infringement of the '138 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '138 Patent.  Those customers directly infringe the '138 Patent by using the Accused Streaming Services.

214.    For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers,

including users and subscribers, to directly infringe the '138 Patent by using the Accused Streaming Services in the United States.

215.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '138 Patent.

216.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '138 Patent.

217.    BritBox's past and ongoing infringement of the '138 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 10,757,156

## DIRECT INFRINGEMENT

218.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

219.    On information and belief, BritBox directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '156 Patent, which recites:

> An apparatus for rendering a video that is adaptively received as a digital stream from a video server over a network, the apparatus comprising;
>
> a media player operating on the apparatus, wherein the media player is configured to stream the video from the video server via at least one transmission control protocol (TCP) connection over the network, wherein the video server stores multiple different copies of the video encoded at different bit rates as multiple sets of streamlets, wherein each of the streamlets yields a different portion of the video on playback, wherein the streamlets across the different copies yield the same portions of the video on playback, and wherein the streamlets in the different copies are aligned in time such that the streamlets that play back the

same portion of the video for the different copies each begin at the same playback time in relation to the beginning of the video, and wherein the media player streams the video by:

requesting sequential streamlets of one of the copies from the video server according to the playback times of the streamlets by transmitting hypertext transport protocol (HTTP) GET requests that identify the selected streamlets stored by the video server, wherein the sequential streamlets are selected by the media player from the based upon successive determinations to shift the playback quality to a higher or lower quality one of the different copies of the video;

repeatedly generating, by the media player, a factor relating to the performance of the network that is indicative of an ability to sustain the streaming of the video;

adapting the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the streamlets of the highest quality copy of the video that is determined to be sustainable at that time; and

presenting the video for playback by providing the requested streamlets in order of ascending start time.

The Accused Streaming Services receive segments of a selected video program for playback of programming over a network connection.  The Accused Streaming Services adapt requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit Z to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

220.    Upon information and belief, BritBox's employees and/or agents test and use the Accused Streaming Services in the United States to directly infringe the '156 Patent.

221.    BritBox possesses knowledge of, and is aware of, the '156 Patent, or became aware of this patent no later than the time of filing this lawsuit.

222.    BritBox's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

223.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, BritBox will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

224.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

225.    BritBox is liable for inducing infringement of the '156 Patent under 35 U.S.C. § 271(b) by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent, with specific intent, by its customers.

226.    Specifically, BritBox actively induces infringement of the '156 Patent by, *inter alia*, training its customers on the use of the Accused Streaming Services and/or promotion and/or sales of the Accused Streaming Services to BritBox's customers including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '156 Patent.

227.    BritBox's customers for the Accused Streaming Services directly infringe the '156 Patent by making, using, selling, and/or offering for sale the Accused Streaming Services.

228.    For example, BritBox actively induces infringement of the '156 Patent, because BritBox has knowledge that end users of the Accused Streaming Services including, but not limited to, users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms, use BritBox's infringing Accused Streaming Services in the United States, and because BritBox encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of the Accused Streaming Services to BritBox's customers

including, but not limited to, end-users, subscribers, digital streaming platforms, digital mobile platforms, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '156 Patent. *See, e.g.*, Exhibit R (writing articles on topics such as, "How do I install the BritBox app on my mobile phone or tablet" and "Subscribing through Amazon, Apple TV, Roku, or C MORE!") (last visited September 28, 2023).

229.    On information and belief, BritBox intends to, and continues to intend to, indirectly infringe the '156 Patent through inducement of the sale and use of the Accused Streaming Services.

230.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '156 Patent.

231.    On information and belief, despite knowing that its actions constituted induced infringement of the '156 Patent and/or despite knowing that there was a high likelihood that its actions constituted induced infringement of the patent, BritBox continued its infringing actions, and continues to make, use, and sell, the Accused Streaming Services.

232.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '156 Patent.

233.    BritBox's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

234.    BritBox's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, BritBox will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT**

235.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of the Complaint as if fully set forth herein.

236.    BritBox is liable for contributory infringement of the '156 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Streaming Services within the United States because the Accused Streaming Services constitute a material part of the invention embodied in the '156 Patent, which BritBox knows to be especially made and/or especially adapted for use in infringement of the '156 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

237.    BritBox is liable for contributory infringement by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent by its customers, including users and subscribers, who use the Accused Streaming Services.

238.    Specifically, BritBox contributes to infringement of the '156 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Streaming Services to BritBox's customers, including users and subscribers, for their use of adaptive-rate content streaming as claimed in the '156 Patent.  Those customers directly infringe the '156 Patent by using the Accused Streaming Services.

239.    For example, BritBox is liable for contributory infringement by knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, BritBox's customers,

including users and subscribers, to directly infringe the '156 Patent by using the Accused Streaming Services in the United States.

240.    The adaptive streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH since its acquisition and continuing development of Move's patent portfolio.  On information and belief, as a provider of streamed content, BritBox would have monitored developments relating to adaptive-rate content streaming technology, including DISH's ABR technology, and knew, or at the very least, should have known, about the issuance of the '156 Patent.

241.    BritBox continues to provide the Accused Streaming Services with full knowledge and disregard of the ABR Patents, including the '156 Patent.

242.    BritBox's past and ongoing infringement of the '156 Patent has and will continue to irreparably harm DISH and cause DISH damages.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, DISH respectfully requests that this Court enter:

A.    A judgment in favor of DISH that BritBox has infringed the ABR Patents, directly, willfully, jointly, and/or indirectly by way of inducing and/or contributing to the infringement of the ABR Patents;

B.    An order of this Court permanently enjoining BritBox and its officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringing, including inducing the infringement of, or contributing to the infringement of, the ABR Patents;

C.      A judgment and order requiring BritBox to pay DISH its damages, costs,

expenses, and pre-judgment and post-judgment interest for BritBox's infringement of the ABR

Patents, as provided under 35 U.S.C. § 284;

D.      An accounting of lost sales not presented at trial and an award of additional

damages for any such lost sales;

E.      A judgment and order finding this case exceptional under 35 U.S.C. § 285

and awarding DISH its costs, disbursements, and attorneys' fees in connection with this action;

and

F.      Such other and further relief to which DISH may show itself to be entitled

and/or as the Court may deem just and proper.

Dated: October 12, 2023                          Respectfully submitted,

                                                 **BAKER BOTTS L.L.P.**


                                                 By:  */s/ Eric Faragi*
                                                     G. Hopkins Guy, III (*pro hac vice* to be filed)
                                                     1001 Page Mill Road
                                                     Building One, Suite 200
                                                     Palo Alto, CA 94304
                                                     Tel: (650) 739-7500
                                                     Fax: (650) 739-7699
                                                     hop.guy@bakerbotts.com

                                                     Ali Dhanani (*pro hac vice* to be filed)
                                                     910 Louisiana Street
                                                     Houston, TX 77002
                                                     Tel: (713) 229-1108
                                                     Fax: (713) 229-2808
                                                     ali.dhanani@bakerbotts.com

                                                     Kurt Pankratz (*pro hac vice* to be filed)
                                                     2001 Ross Ave., Suite 900
                                                     Dallas, TX  75201
                                                     Tel: (214) 953-6584
                                                     Fax: (214) 661-4584
                                                     kurt.pankratz@bakerbotts.com

Jamie Lynn
700 K Street, NW
Washington, DC 20001
Tel: (202) 639-7786
Fax: (202) 585-1026
jamie.lynn@bakerbotts.com

Thomas Martin (*pro hac vice* to be filed)
700 K Street, NW
Washington, DC 20001
Tel: (202) 639-7752
Fax: (202) 585-4093
tommy.martin@bakerbotts.com

Eric Faragi
30 Rockefeller Plaza
New York, NY  10112
Tel: (212) 408-2591
Fax: (212) 259-2591
eric.faragi@bakerbotts.com

*Attorneys for Plaintiffs*